## ELIZABETH NICHOLS

### *v.*

### FRANK E. OLDER, et ux., et al.

[Decided January 5th, 1911.]

1. *3 Gen. Stat. 1895 p. 3372 § 415*, contained in the Martin act relating to the collection of arrears of taxes and assessments, provides that any person having an estate in or mortgage on land sold for taxes, whose lien appears of record in the county, may redeem at any time within six months after notice of the sale. Section 422 provides that taxes hereafter levied which shall remain unpaid for three years may be collected in the same way as provided in the act as to old taxes, and that the tax deed shall have the same effect as if made to enforce such old taxes, but that the deed shall not be given till one year from the time of sale. during which time the owner or any person having an interest in or lien on the land, may redeem.—*Held*, that the provisions of section 415 as to notice are not changed by section 422, but apply to cases to which the act is extended by the latter section, so that only six months' notice is required before the giving of a tax deed under section 422.

2. A separate assessment for taxation and sale together of a number of lots is at most an irregularity, and unless within the proviso of the section, is cured by *3 Gen. Stat. 1895 p. 3384 § 453*, providing that upon the surrender of a certificate of sale for taxes and the proof of service

of notice required; the proper officer shall, after six months from the service of the notice, deliver to the purchaser at the sale a deed by which the purchaser shall take a good and sufficient title in fee-simple absolute, free of all encumbrances, of which the deed shall be presumptive evidence, and in any proceedings prosecuted or defended for possession of the property or in establishment or defence of the title under such deed, the title shall not fail by reason of any irregularity or formal defects in the procedure upon which the sale shall have been made, or by reason of any irregularity in enforcing the tax, provided the property sold was liable to the tax, and it does not appear that any substantial injury was done to the owner of the property by reason of the irregularity.

3. Under Sales of Land act (*3 Gen. Stat. 1895 p. 2982 §§ 14, 15*) providing that the recitals in deeds or declarations of sale made by public officers, authorized by law to make such sales, shall be taken *prima facie* as evidence of the truth of what is therein recited, and that the proceedings on which such deeds are founded shall not be subject to be questioned collaterally, but may be at any time reviewed by *certiorari* or other proper proceedings in the supreme court, or circuit court, a tax deed is conclusive evidence of title as against the objection that lots were assessed for taxation separately and sold together, unless the proceedings on which the deed is founded shall have been directly attacked and set aside.

Heard on bill, answers, replications and proofs.

*Mr. Joseph A. Duffy,* for the complainant.

*Messrs. Northrop & Griffiths,* for the defendants Mary C. and Louis F. Bettcher, John and Rosa Levanto and John Pearson.

GARRISON, V. C.

This bill was originally filed by Elizabeth A. Nichols, who has since died, and Edith W. Weeks, her executrix, has been substituted as complainant.

The complainant is the holder of a mortgage covering certain lands in Jersey City. The purpose of the bill is to foreclose the mortgage, and the answering defendants are people who are the holders of tax deeds to portions of the land. In their answers they set up their deeds and thereby claim title free and clear of the mortgage. The questions involved are whether, under the Martin act, and the various other acts concerning taxes and sales therefor, and deeds given in pursuance of such sales, these defendants who hold such deeds are entitled to the lands free of the

encumbrance of the mortgage, or whether their lands are still subject to such encumbrance.

On the 14th of July, 1899, Frank E. Older mortgaged lots 115, 116, 117 and 118, in block 90, and fifty feet of the rear of lots 177, 178, 179 and 180, in the same block, fronting on Sip avenue, to Ezra K. Sequine. So as to prevent confusion, I will here state that the last two-named lots are not affected by any subsequent proceeding of which we need take any notice in determining the question arising under the tax title to be spoken of.

On the 1st of February, 1901, Sequine assigned this mortgage to Mary M. Dean, whose assignment was recorded on the 21st day of January, 1902. Dean subsequently died, and her executor, Seymour, on the 18th of April, 1904, assigned the mortgage to Elizabeth Nichols.

The mortgage is due for non-payment, and interest is claimed from its date.

On the 5th of September, 1901, lots 115 to 118, in block 90, inclusive, were sold at a tax sale by the city collector of Jersey City to Margaret Phelan for $40. Margaret Phelan, by an assignment endorsed upon the tax sale certificate, assigned her rights to William Anderson. Notices of this sale, in due form, were given, as the returns in the city records show, to Frank E. Older, the owner of the premises at the time, and to Ezra K. Sequine, who appeared upon the record at that time to be the owner of the mortgage above mentioned.

The notice to Older was dated October 2d, and was served on October 10th, 1901, and Sequine was served November 27th, 1901.

On the 1st day of October, 1902, the city collector gave a deed for the lots above mentioned to William Anderson.

The dispute between the parties arises over the effect to be given to this deed.

It is the contention of Levanto and Bettcher and Arnone, the purchasers from or through Anderson, that the effect of this deed was to cut off all interest in the premises theretofore held by Older and Sequine, or by anyone on account of the mortgage made by Older to Sequine, and to vest a fee-simple in Anderson, who conveyed to each of the parties respectively a fee-simple to

the land described in their deeds. Their contention is that by
the four hundred and fifteenth section, page 3372, of the General
Statutes (the so-called Martin act), the six months' notice re-
quired to be given thereby was given to the parties to whom it was
required to be given, and that the deed thereafter made, being
based upon notice to all of the parties shown by the record to be
interested, barred all persons theretofore interested as owners or
mortgagees, and vested title in the grantee in that deed, namely,
Anderson.

The contention of Nichols, the last assignee of the mortgage,
is that by section 422, page 3374, of the same act (which, among
other things, provides that the deed shall not be given for the
land until after the expiration of one year from the time of sale,
during which time the owner, or any party having an interest in
or lien upon the said land, may redeem the same), the intent of
the legislature is shown to extend the period during which notice
must be given to a year; or, if not that, then to change the pre-
vious provisions with regard to notice so as to require that notice
shall be given to those persons, who, six months before the end
of the year from the date of sale, are shown by the records to be
interested.

I am assured by counsel on each side that there are no decided
cases bearing upon the point in issue, and it is, therefore, one of
first impression. I cannot see how any authorities which do not
directly concern the construction of these sections will be helpful.
The purpose of the legislature, which originated the Martin act,
undoubtedly was to create a system for the collection of old
taxes, and the idea of permitting the machinery thereby devised
to be applied to what might be termed "current taxes" (those,
namely, that were not more than three years old) was an after-
thought.

In providing for the collection of such taxes by the means set
forth in the Martin act in its previous sections, the legislature
seems only to have made one change, and that is to extend the
time within which the municipality could vest title in the pur-
chaser by a deed from six months after notice to one year after
the date of sale.

Under the machinery and provisions with respect to "old

taxes" ·after the sale, the purchaser, under section 415, page 3372, could give notice to those persons, who, by the records in the county, were shown to have ownership or mortgage interest, and six months after such notice was given, the municipality was required to give him a deed, if those persons had not, during those six months, taken the proper steps to redeem; and only persons to whom such notice had been given were invested with the right to redeem under said section 415.

Under section 422, however, the time within which the deed could be delivered was extended to one year after the date of sale. Nothing is said specifically about the length of notice; but the persons who might redeem within a year from the date of sale are not only those to whom notice was given, but any person having any interest in or lien upon the lands.

I am of opinion that there is nothing specific enough in this section with respect to the matter of notice to change the specific provisions with respect to notice contained in the previous sections of the act—in other words, it is clearly provided in the previous sections that six months' notice shall be given to the persons who are shown by the record to be the owners or holders of mortgage interests. Those sections are not changed by the section now being considered—422.

The deed based upon notice is to have the same effect, this section says, as the deed based upon the notice given under the previous section 415. The time within which the deed may be delivered is extended—that is to say, it is provided that it must not be given within one year; it may be given, of course, exactly at the end of one year. My reading of the act is that for what we have termed "current taxes," dealt with in section 422, all of the machinery provided with respect to "old taxes" in the matters of sale, notice and deed, are to remain the same—that is, the sale is to take place in the same way, purchasers are required to give a six months' notice at any time after the sale to all those persons who by the records ·are shown to be owners of the land or holders of mortgage interests therein, and if those persons, within one year from the date of sale, do not redeem, or if anyone having any interest or' lien in the land does not within one year· redeem, then, at the end of one year, the municipality is required

to give a deed to the purchaser at the tax sale, and that deed has the same effect to cut off all persons to whom notice was given as is provided in section 415.

The result of this determination is that this mortgage, as represented now by the last assignee, the complainant, is cut off and debarred from exercising any rights by reason of the mortgage with respect to lots 115, 116, 117 and 118 in block 90.

The complainant next insists that the title conveyed by the deed of October 1st, 1902, from the city to Anderson, is invalid as against the complainant, because the city assessed these lots 115, 116, 117 and 118, Belvidere avenue, as it was then called— now Bryant street—separately, and sold them together.

It is conceded to be the law that this is an irregularity which, if called to the court's attention by *certiorari,* will be set aside. *Barkley* v. *Hand,* 41 *N. J. Law* (*12 Vr.*) 517; *Hasbrouck Heights Land Co.* v. *Lodi,* 66 *N. J. Law* (*37 Vr.*) 102; *Jones* v. *Landis,* 50 *N. J. Law* (*21 Vr.*) 377.

The result of this will be to hold that the sale is invalid and the deed subsequently given in pursuance thereof is invalid, unless, by other provisions of the act called the "Martin act," this complainant may not raise this question; or if she does raise it, cannot succeed.

It is contended on behalf of the defendants that by section 2 of the act of April 8th, 1892 (*Gen. Stat. p.* 3387 ¶ 466), no attack can be made upon their deed unless it is made within two years from its date. That section provides that ·

"No writ of *certiorari* shall be allowed, and no action shall be brought, to contest or set aside any deed hereafter given pursuant to the provisions of the act of which this is a supplement  *  *  *  or to recover possession of the lands conveyed by such deed after the expiration of two years from the date of the execution of such deed."

The defendants urge that if their deed is given force and efficiency, its effect is to bar the complainant from all right under her mortgage, and since in her bill she charges that her mortgage is prior in lien to their deed, and that their deed is subordinate and subject to her mortgage, she, the complainant, is necessarily contesting their deed. They argue that this action of foreclos-

ure, which seeks to subordinate their deed to her mortgage, is therefore necessarily an action brought to contest or set aside their deed, and is therefore within the language of this section.

There is, of course, force in this contention; but since I do not find it necessary to rest my decision upon it, I will not attempt to settle the proper construction of this act in this proceeding.

A more apparent bar to the complainant's rights under her mortgage exists by virtue of section 453 of the Martin act. *Gen. Stat. p. 3384.* That section, after providing that the certificate of sale shall contain certain covenants, goes on to provide that upon the surrender of the certificate of sale and the proof of the service of the notice required, the proper officer, after the expiration of six months from the date of the service of the notice, shall deliver to the purchaser at the sale, or his assignee, a deed, and that by such deed the purchaser

"shall take a good and sufficient title to the property sold in fee-simple absolute, free of all encumbrances * * * of which the said deed shall be presumptive evidence in all courts and places, and in any proceedings or actions to be by such purchasers * * * taken, prosecuted or defended for the recovery of the possession of the property so sold as aforesaid or in the establishment or defence of his or their title, shown as aforesaid by such deed, the title shall not fail, or be defeated by reason of any irregularity or formal defect in the procedure taken under this act, upon which the sale shall have been made or the title conveyed as aforesaid, or by reason of any illegality in fixing and adjusting the tax, assessment and lien to enforce which said sale was made or in the proceeding for collecting the same; *provided* the property sold was liable, at time such tax, assessment and lien was fixed and adjusted, to the imposition of a tax, assessment or lien in respect of the purposes for which such tax, assessment and lien was fixed and imposed, and it does not appear that any substantial injury was done to the owner of the property by reason of the irregular or illegal manner or method of fixing, imposing or collecting said tax, assessment and lien." * * *

I presume that the matter of separate assessment and lump sale is, at most, an illegality in fixing the tax, or in the proceedings for the collection of the same, and the latter, I should say, undoubtedly, because there does not seem to be any complaint against the regularity or legality of imposing the separate assessment—the complaint seems to be against collecting separate assessments of property owned by the same owner by a lump sale.

Such illegality in the proceedings for collecting this tax is within the language of section 453, and is cured unless there is something in the proviso which alters the previous portion of the section.

Taking up the proviso: The property, so far as appears, was liable, at the time, to the tax; and it does not appear that any substantial injury was done to the owner of the property by reason of the "irregular or illegal manner or method of fixing, imposing or collecting said tax."

There is not the slightest proof before me of any injury, substantial or otherwise, that was done to the owner of the property by reason of this method of sale. It is argued by the mortgagee—first, that she is an owner within the meaning of this act, and second, that she was injured by having these four lots sold in a lump. I doubt very much whether in this act, where the two classes of interests are always spoken of separately, a mortgagee could properly be held to be an owner. I think it will be found in every section of the act where the two classes of interest are mentioned, one class is termed "the owner," and the other class is termed "the mortgagee." However, even assuming that she is within the term "owner," it does not appear that any substantial injury was done to her by reason of this method of sale. It does not appear that exactly the same result would not have ensued as to her if these lots had been knocked down separately to purchasers instead of all being knocked down to one purchaser in one lump sale.

If, however, I am wrong in my interpretation of this section of the act, or of the proper application of it to the facts of this case, and it should be held that this complainant was within the proviso, and had shown substantial injury, there is another statute which has been interpreted and which seems to apply exactly to the case at bar, and be determinative of the issue against the complainant. Sections 14 and 15 of the Sale of Land act (*Gen. Stat. p. 2982*) provide that the recitals in deeds or declarations of sale made by public officers authorized by law to make such sales, shall be taken *prima facie* as evidence of the truth of what is therein recited, and that

"the proceedings upon which such deeds, declarations of sale, and conveyances, are founded shall not be subject to be questioned collaterally, but may be at any time reviewed by *certiorari* or other proper proceeding in the supreme court or circuit courts."

In the foot-note in the General Statutes there will be found cited many cases dealing with these sections, and the propriety of their application to the case in hand will be demonstrated by reference to *Doremus* v. *Cameron* (*Chancellor McGill, 1891*), *49 N. J. Eq.* (*4 Dick.*) *1.* On page 9, the chancellor, after citing the cases which set forth the familiar principle that the power to sell for non-payment of a tax must be strictly pursued or the sale will be void, and that the party claiming under such a deed must, unless the rule is varied by legislative enactment, show that every prerequisite of the exercise of the power has been complied with, cites this statute as showing how our legislature has varied the familiar rule, and construes that statute as providing that the deeds made by such public officers are conclusive as to the transmission of title until the proceedings upon which they are founded shall have been directly attacked and set aside.

Applying the law, therefore, to the facts in the case at bar, I hold that the complainant may not enforce her mortgage against those defendants who hold the tax deeds, and that as to them the bill must be dismissed; as to the other lands covered, which are not affected by the tax sales, there should be a decree for the complainant for such amount as is due upon the mortgage for debt, interest and costs.